**CASE NO. 22-3600**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

BEAVER STREET INVESTMENTS, LLC

Plaintiff-Appellant

-vs.-

SUMMIT COUNTY, OHIO

Defendant-Appellee

---

On Appeal from the United States District Court for the
Northern District of Ohio, Case No. 5:22-CV-00006

---

**-SECOND CORRECTED-
BRIEF OF APPELLANT BEAVER STREET INVESTMENTS, LLC**

---

*/s/ John T. Pfleiderer*

Warner Mendenhall    (0070165)
John Pfleiderer         (0100195)
MENDENHALL LAW GROUP
190 North Union Street - Suite 201
Akron, Ohio 44308
Phone:        (330) 535-9160
Facsimile:    (330) 762-9743
Email: warner@warnermendenhall.com
john@warnermendenhall.com

Mark Immormino       (0022293)
MARK IMMORMINO CO. LPA
1801 Chartley Road
Gates Mills, OH 44113
Phone:       (216) 566-8099
Cell:         (216) 235-0416
Facsimile:    (440) 683-4809
Email:  markimmormino@msn.com
*Attorneys for Plaintiff*

# CORPORATE DISCLOSURE STATEMENT

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

## Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number: 22-3600 _____          Case Name: Beaver Street v. Summit County _____

Name of counsel: Warner D. Mendenhall _____

Pursuant to 6th Cir. R. 26.1, Beaver Street Investments, LLC _____
                              *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    No

---

### CERTIFICATE OF SERVICE

I certify that on _____ September 12, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                    s/ John T. Pfleiderer _____
                    _____
                    _____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES ............................................................................v

JURISDICTIONAL STATEMENT ....................................................... vii

STATEMENT REGARDING ORAL ARGUMENT .......................................... viii

STATEMENT OF THE ISSUE PRESENTED ....................................................... ix

STATEMENT OF THE CASE ...............................................................................1

    A. Legal Background of Land Bank Foreclosure Proceedings .....................1

    B. Summary of Relevant Procedural History ................................................3

SUMMARY OF ARGUMENT .................................................................5

LAW AND ARGUMENT .........................................................................7

    The district court erred when it did not rule that the statute of limitations for BSI's 42 U.S.C. § 1983 claim began to accrue on the day the title to its property was transferred, and instead ruled that the statute of limitations for the claim began to run the day the Summit County Board of Revision issued its Adjudication of Foreclosure ...................................................................7

    A. Standard of Review ...................................................................................7

    B. BSI's § 1983 Claim Began to Accrue When the Takings Claim Became Ripe and the Property Was Transferred from BSI to the Land Bank ...........7

    i.   The "Contingent Future Events" Principle is the General Principle for Ripeness. ..............................................................................................8

    ii.   A Tax Foreclosure Transfer is a Physical Taking .......................................9

    iii.   The "Final Decision" Requirement is Less Applicable to Physical Takings. 9

iv.   When Applying *Williamson Cnty.*'s "Final Decision" Requirement in Physical Takings Cases, the Focus Should be on Finality.........................11

v.   The "Reasonable Degree of Certainty" Standard Does Not Apply to Physical Takings. ...............................................................................................12

vi.   The Sixth Circuit Court's *Harrison* Decision did not Hold that the Statute of Limitations Expired when the Adjudication of Foreclosure Was Issued. ..14

vii.   Under The "Contingent Future Events" Principle, The Taking Was Not Ripe at the Time the Adjudication of Foreclosure Was Issued. .........................15

viii.   The Takings Claim Became Ripe and Hence the Statute of Limitations Accrued When BSI Lost the Right to Pay All Impositions to Retain Ownership, Even Under the *Williamson Cnty.* Standard...........................16

CONCLUSION ..........................................................................................17

CERTIFICATE OF COMPLIANCE ......................................................18

CERTIFICATE OF SERVICE ...............................................................18

ADDENDUM ...........................................................................................19

      A. ORIGINATING COURT DOCUMENTS .............................................19

# TABLE OF AUTHORITIES

## Cases

*Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007) ..................................................9

*Daniel v. Cnty. of Santa Barbara* ...........................................................................11

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) .............................................8

*Fowler v. Guerin* ....................................................................................................12

*Harrison v. Montgomery Cnty.*, Ohio, 997 F.3d 643 (6th Cir. 2021) .....................15

*Hensley v. City of Columbus*, 557 F.3d 693 (6th Cir. 2009) ......................... 5, 6, 12

*Horne v. Department of Agriculture*, 576 U.S. 350 (2015) ....................................10

*In re NM Holdings Co., LLC*, 622 F.3d 613 (6th Cir. 2010) ...................................8

*Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) ........... 10, 11, 15

*Kristen M. Scalice v. Beaver Street Investments, LLC*, CV-201711-4588 (Summit C.P.) ......................................................................................................................3

*Kurtz v. Verizon New York*, 758 F.3d 506 (2nd. Cir. 2014) ......................... 9, 12, 17

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ...........................................9

*Martin v. U.S.*, 894 F.3d 1356 (Fed. Cir. 2018) ....................................................10

*McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) ......................................................8

*Pakdel v. City and Cnty. of San Francisco, California*, 141 S.Ct. 2226 (2021) .5, 11

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) .................................... 5, 13, 14, 16

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002) 5, 6, 15

*Texas v. U.S.*, 523 U.S. 296 (1998) ............................................................... 5, 9, 16

*Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568 (1985) .....................9

*Williamson Cnty. Regional Planning Com'n v. Hamilton Bank of Johnson City*,
  473 U.S. 172 (1985) ...................................................... 6, 9, 10, 11, 12, 15, 16, 17

**Statutes**

O.R.C. § 323.65 ...............................................................................1, 2

O.R.C. § 323.66 ...................................................................................1

O.R.C. § 323.71 ...................................................................................2

O.R.C. § 323.72 ...................................................................................1

O.R.C. § 323.73 ...............................................................................1, 2

O.R.C. § 323.78 ............................................................................ 2, 3, 4

O.R.C. § 5715.02 .................................................................................1

O.R.C. § 5722.01 .................................................................................2

O.R.C. §§ 323.65, et seq. .....................................................................1

**Rules**

Fed. R. Civ. P. 12 ................................................................................8

**Treatises**

Black's Law Dictionary (11th ed. 2019) .................................................10

Wright & Miller, 13B. Fed. Prac. & Proc. Juris. § 3532 ...........................9

**Constitutional Provisions**

United States Constitution, Fifth Amendment..........................................8

United States Constitution, Fourteenth Amendment .................................8

## **JURISDICTIONAL STATEMENT**

This appeal arises from a final order of the United States District Court for the Northern District of Ohio granting Defendant-Appellee Summit County Ohio's motion to dismiss for failure to file within the applicable statute of limitations. The basis for the District Court's jurisdiction over this action is under 28 U.S.C. § 1331 as such action arises under 42 U.S.C. § 1983 and the 5th and 14th Amendments to the United States Constitution.

This Court has appellate jurisdiction over all final decisions, including the aforementioned order, of the United States District Court for the Northern District of Ohio under 28 U.S.C. § 1291.

Appellant's Brief is filed timely pursuant to this Court's September 9, 2022 docket entry extending the filing deadline for Appellant's Brief to September 26, 2022.

This is an appeal from a final order that disposed of all parties' claims.

## STATEMENT REGARDING ORAL ARGUMENT

The facts and legal arguments are of precedential value and the decisional process would be significantly aided by oral argument. The ruling in this case will determine when a claim arises from violation of a fundamental right to property. While the legal issues can be decided based upon the law and argument in this brief, to the extent the Court will entertain oral arguments, Appellant respectfully requests to be heard and given the opportunity to answer any questions the panel may have regarding the issue of this appeal.

## STATEMENT OF THE ISSUE PRESENTED

This appeal centers on the narrow question of when ripeness and the two-year statute of limitations begins for the purposes of a physical taking. Plaintiff-Appellant Beaver Street Investments, LLC's ("BSI") property was transferred to the Summit County Land Bank Corporation on January 21, 2020, at the close of its statutory redemption period, pursuant to an Adjudication of Foreclosure order issued by the Summit County Board of Revision on June 3, 2019. Accordingly, BSI presents the following issue for appellate review:

1. The District Court erred when it did not rule that the statute of limitations for BSI's 42 U.S.C. § 1983 claim accrued the day title to its property was transferred, and instead ruled the statute of limitations began to run the day the Summit County Board of Revision issued its Adjudication of Foreclosure.

## STATEMENT OF THE CASE

### A. Legal Background of Land Bank Foreclosure Proceedings

In 2006, the Ohio General Assembly enacted O.R.C. §§ 323.65, et seq. (the "Statute") which allowed county boards of revision to foreclose on real property with outstanding property tax liens if the real property was "abandoned," as defined by O.R.C. § 323.65(A).

Unlike a traditional tax foreclosure proceeding, a board of revision foreclosure need not be instituted in court and is instead conducted by the board of revision itself. O.R.C. § 323.66. A board of revision is comprised of the county treasurer, the county auditor[1], and a member of the board of county commissioners. O.R.C. § 5715.02.

As in traditional tax foreclosures, a property foreclosed by a board of revision may be sold at public auction for the county to recover its tax liens from the sale proceeds. E.g., O.R.C. § 323.72(D); O.R.C. § 323.73. And, as in traditional tax foreclosure proceedings, when a foreclosed property is sold at a public auction, the Statute gives "any party…claiming a right to distribution of surplus" a "cause of action in the county or municipal court of the jurisdiction in which the land reposes." O.R.C. § 323.73(C).

---

[1] In Summit County, Ohio, this position is referred to as the Summit County Fiscal Officer.

1

Unlike traditional tax foreclosures, the Statute also permits a board of revision to order direct transfer of a property to a county land reutilization corporation, or electing subdivision, as defined in O.R.C. § 5722.01, that has chosen to acquire the property. O.R.C. § 323.71(A)(1); O.R.C. § 323.73(G); O.R.C. § 323.78. When a board of revision orders direct transfer, the foreclosed property is not sold at public auction. O.R.C. § 323.73(G); O.R.C. § 323.78. When a board of revision directly transfers land to a county land reutilization corporation or electing subdivision for redevelopment, instead of selling or acquiring the property to recover unpaid tax amounts, it is exercising its eminent domain power in lieu of its taxing power. When a property is directly transferred under O.R.C. § 323.73(G) or O.R.C. § 323.78, all tax liens on the property are forever discharged and no tax money is collected by the county.

A board of revision may order direct transfer of property in two scenarios:

1. The total impositions owed by the taxpayer (i.e., all taxes assessments, and other amounts certified as a lien against the property) exceed the fair market value of the property. O.R.C. § 323.71(A)(1); O.R.C. § 323.73(G).
2. The total impositions owed by the taxpayer are less than the fair market value of the property and the county treasurer invokes an "alternative redemption period" under O.R.C. § 323.78.[2]

---

[2] The "alternative redemption period" is an expedited time window during which an owner of a foreclosed is able to pay the assessments on his property to *redeem* it and prevent transfer of the property. O.R.C. § 323.65.

When title to property is transferred to a county land reutilization corporation or to an electing subdivision under O.R.C. § 323.78, the entity receiving the property pays no consideration for the property. Rather, O.R.C. § 323.78(B) provides that upon such direct transfer of a foreclosed property, the property is transferred "free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged."

When a county treasurer waives the county's right to collect the real estate taxes and assessments owed on a property and elects to have it transferred to a county land reutilization corporation or electing subdivision, the Statute does not provide for the payment of any taxes to the county or any compensation to property owners, even where the fair market value of the property exceeds the total amount of impositions owed. O.R.C. § 323.78(B).

## B. Summary of Relevant Procedural History

This case originates in a Summit County, Ohio tax foreclosure case filed on November 1, 2017, and styled *Kristen M. Scalice v. Beaver Street Investments, LLC*, CV-201711-4588 (Summit C.P.) (the "Foreclosure Case"). [R.1, Compl., Ex. 4, PageID 21]. Through its fiscal officer, Appellee Summit County, Ohio (the "County") brought the Foreclosure Case against four parcels (the "BSI Property"). [Id.].

On June 3, 2019, the Summit County Board of Revision entered its Adjudication of Foreclosure. [Foreclosure Order, R. 7-2, PageIDs 96-103]. The Adjudication of Foreclosure allowed for a redemption period, during which BSI could pay "the full amount of all taxes, assessments, penalties, interest and other charges…together with all costs incurred in [the Foreclosure Case] proceeding." [Foreclosure Order, R. 7-2., PageID 99]. During this period, BSI retained its equity of redemption in the BSI Property. O.R.C. § 323.78(B). Accordingly, if BSI paid such amounts within the redemption period, it would retain full fee ownership and, importantly, retain the surplus equity in the property over and above the paid impositions. *Id*. Being unable to pay the impositions, BSI's redemption rights were terminated when the redemption period expired on January 21, 2020 [BOR Order, R. 13-2, PageID 183], at which point BSI was simultaneously dispossessed of its fee title and surplus equity, and its taking claim became ripe for adjudication.

## SUMMARY OF ARGUMENT

For a takings case, the statute of limitations accrues when the claim becomes ripe. *Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009). At the time of the Adjudication of Foreclosure, BSI retained title to its property contingent on payment of all the impositions before the end of the statutory redemption period. The general principle is that the claim is not ripe if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 298 (1998). When the transfer of ownership of the Property to the land bank was contingent on BSI's failure to pay all the impositions, the takings claim could not be ripe. Therefore, the statute of limitation did not accrue until the transfer of the property was certain at the end of the twenty-eight-day statutory redemption period.

A tax foreclosure transfer is classic physical taking where the government takes property from a private citizen. Physical takings and regulatory takings are distinct. *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002). It can be difficult to determine when a laws or regulation becomes a regulatory taking; however, physical takings are straightforward. *See Pakdel v. City and Cnty. of San Francisco, California*, 141 S.Ct. 2226, 2230 (2021); *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001). Accordingly, the Supreme Court opined that courts should not "treat cases involving physical takings as controlling

precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." *Tahoe-Sierra*, 535 U.S. 302, 323 (2002).

Instead of applying the general principle for ripeness, the District Court emphasized the "final decision" requirement from *Williamson Cnty. Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) and the "reasonable degree of certainty" standard from *Palazzolo*, which were introduced in the context of regulatory takings. [Order of Dismissal, R. 21, PageIDs 242-43.].

Recognizing the difference between physical takings and regulatory takings, this Court in *Hensley v. City of Columbus* adjusted the wording of the "final decision" requirement to "final action" to assess ripeness of physical takings. 557 F.3d 693, 696 (6th Cir. 2009). Yet, the District Court fixated on the word "decision" and its synonymity with the word "adjudication," and failed to consider the lack of finality of the taking itself: the foreclosure transfer would not occur if the BSI paid all the impositions.

The takings claim was not ripe when the Board of Revision issued the Adjudication of Foreclosure. Rather, *Williamson Cnty.*'s finality requirement, if it applies at all, was only satisfied at the end of the statutory redemption period when it was reasonably certain the Property would be taken. For these reasons, the District Court erred in holding that the statute of limitations began to accrue upon issuance of Adjudication of Foreclosure instead of the end of the statutory redemption period

6

or the time when the property was actually transferred. Until such time, nothing had

been taken.

## LAW AND ARGUMENT

BSI raises one issue on appeal:

**The district court erred when it did not rule that the statute of limitations for BSI's 42 U.S.C. § 1983 claim began to accrue on the day the title to its property was transferred, and instead ruled that the statute of limitations for the claim began to run the day the Summit County Board of Revision issued its Adjudication of Foreclosure.**

### A. Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12, the appellate

court reviews the district court's decision *de novo*. *In re NM Holdings Co., LLC*, 622

F.3d 613, 618 (6th Cir. 2010). The defendant must show the plaintiff has failed to

state a claim for relief. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A

motion to dismiss for failure to state a claim is disfavored, especially when one's

civil rights are at stake. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). The

appellate court shall construe the complaint in the light most favorable to the

plaintiff, accept its allegations as true, and draw all reasonable inferences for the

plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### B. BSI's § 1983 Claim Began to Accrue When the Takings Claim Became Ripe and the Property Was Transferred from BSI to the Land Bank.

BSI asserted a claim under 42 U.S.C. § 1983 for violations of the Fifth and

Fourteenth Amendments of the United States Constitution. [Complaint, ¶¶ 32-43,

7

R.1, PageIDs 7-9]. The parties agree that the statute of limitations in Ohio for a 42 U.S.C. § 1983 claim is two years. *See Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). The District Court dismissed BSI's claim because it opined that BSI's § 1983 claim began to accrue on June 3, 2019, and the statute of limitations ran on June 3, 2021, and therefore BSI's complaint was filed untimely on January 3, 2022. [Order of Dismissal, R. 21, PageID 244]. The district court erred for a number of reasons.

### i.    The "Contingent Future Events" Principle is the General Principle for Ripeness.

It is a well-established <u>general principle</u> that "a claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 298 (1998); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480-481 (1990); *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580 (1985) (quoting Wright & Miller, 13B. Fed. Prac. & Proc. Juris. § 3532). The Supreme Court in *Williamson Cnty. Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) did not create an exception to this general principle when introducing its two-part test for ripeness in takings cases. Other Circuit Courts have cited this general principle in takings cases. For example, the Second Circuit Court referred to this principle to define ripeness and explained that the *Williamson Cnty.'s* two-part test was "[t]o test the ripeness of constitutional takings claim in federal court." *Kurtz v. Verizon New York*, 758 F.3d 506 (2nd. Cir.

8

2014). The Federal Circuit Court referred to this general principle when elucidating the definition of ripeness before applying the *Williamson Cnty.'s* ripeness test for an alleged regulatory taking. *Martin v. U.S.*, 894 F.3d 1356, 1363 (Fed. Cir. 2018). *Williamson Cnty.'s* ripeness test does not define ripeness, nor does it replace the general principle of "contingent future events."

### ii.    A Tax Foreclosure Transfer is a Physical Taking.

A physical taking is "a physical appropriation of an owner's property by an entity clothed with eminent-domain authority." *Physical Taking*, Black's Law Dictionary (11th ed. 2019). The most straightforward and archetypical physical taking is transfer of "title and ownership" to the government or a government-designated third party. *See Horne v. Department of Agriculture*, 576 U.S. 350, 362 (2015). The transfer of parcels of land by Summit County from BSI to its land bank is a clear physical taking. This characterization also comports with common sense, as an unconstitutional taking cannot occur until a property is actually taken. *See Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019) ("a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it.").

### iii.    The "Final Decision" Requirement is Less Applicable to Physical Takings.

The District Court failed to fully recognize the difference between a regulatory and physical taking, and it placed too much emphasis on *Williamson Cnty's* "final decision" requirement.

The state-litigation requirement was eliminated by the Supreme Court in *Knick*. 139 S. Ct. 2162, syllabus (2019). The remaining and upheld requirement involves ripeness. "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. 172, 186.

This ripeness standard was formulated in *Williamson Cnty.* to address regulatory takings. Indeed, the Supreme Court described this requirement as "the application of government regulations [that] effect a taking of property interest." *Id.* at 187. A "final decision" is required for regulatory takings because such a decision contours the restrictive effect of the regulation and is essential to identifying regulatory takings. *See Pakdel v. City and Cnty. of San Francisco, California*, 141 S.Ct. 2226, 2230 (2021).

Other Circuit Courts place little or no emphasis on the "final decision" requirement in physical taking cases. For example, in *Daniel v. Cnty. of Santa Barbara*, the Ninth Circuit Court did not make the "final decision" inquiry at all.

288 F.3d 375 (9th Cir. 2002). The Ninth Circuit Court explained that the ripeness analysis should be in "a modified form": "the ['final decision'] requirement is automatically satisfied at the time of the physical taking… [because] where there has been a physical invasion, the taking occurs at once, and nothing the city can do or say after that point will change that fact." 288 F.3d, 382 (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1281 n.28 (9th Cir. 1986)). More recently, in *Fowler v. Guerin*, the Ninth Circuit Court pointed out that the *Williamson Cnty's* ripeness test was prudential, and a prudential ripeness test did not apply to physical appropriation of property or the situation where the government directly took a person's property. 899 F.3d 1112, 1117 (9th Cir. 2018). Thus, it did not apply the *Williamson Cnty.* ripeness requirements altogether. *Fowler*, 899 F.3d 1112. Accordingly, the *Williamson Cnty* "final decision" requirement is less applicable to physical takings.

### iv.    When Applying *Williamson Cnty.*'s "Final Decision" Requirement in Physical Takings Cases, the Focus Should be on Finality.

When dealing with physical takings, this Court has recognized a difference between physical and regulatory takings and focuses on the word "final" instead of "decision." This Court in *Hensley v. City of Columbus* slightly modified the wording of the requirement from "final decision" to "final action" and held that "[w]ith a 'physical taking,' the taking itself is viewed as a <u>final action</u>…." 557 F.3d 693, 696 (6th Cir. 2009) (emphasis added). Similarly, in *Kurtz v. Verizon New York*, the

Second Circuit Court slightly adjusted the wording of "final decision" to "finality" and held that "the physical taking in itself satisfied the finality requirement." 758 F.3d 506, 513. This shows that the purpose of the "final decision" is to determine if there is finality for the taking. Such application of the test accommodates the classic physical taking -- a transfer of ownership to the government. This type of taking would fit into the word "action" more than the word "decision".

The District Court's decision was based on its fixation on the word "decision" and its synonymity with the word "adjudication". [Order of Dismissal, R. 21, PageID 243] (using "adjudication" and "decision" interchangeably). Adjudication of Foreclosure intuitively fits into the word "decision" more than transfer of property does. Notably, the District Court called the Adjudication of Foreclosure "the final adjudication" throughout its order of dismissal. [Id.]. Influenced by this linguistic similarity, the District Court held that adjudication equaled finality, despite the reality that there was no finality because BSI had the option and right to stop the transfer of the property during the redemption period. In this sense, the District Court's application of the "final decision" requirement was inappropriate.

**v.    The "Reasonable Degree of Certainty" Standard Does Not Apply to Physical Takings.**

In dismissing BSI's case, the District Court relied on the proposition articulated by the Supreme Court in *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) that "once it becomes clear that the permissible uses of the property are known to a

reasonable degree of certainty, a taking claim is likely to have ripened." [Order of Dismissal, R. 21, PageID 242-43].

The District Court improperly applied *Palazzolo's* "reasonable degree of certainty" standard to the ripeness of a physical taking claim. The District Court asserted that because "it was 'known to a reasonable degree of certainty' what would happen to the property" when the Adjudication of Foreclosure was issued, the claim became ripe then. [Id.]. However, the Supreme Court in *Palazzolo* did not refer generally to "what would happen to the property" in just any taking. Rather, it specifically referred to the "permissible uses of the property" in land-use regulatory takings. *Palazzolo*, 533 U.S. 606, 620 (2001).

The District Court disregarded the nature of the taking that *Palazzolo's* "reasonable degree of certainty" standard was meant to apply to. *Palazzolo* concerned regulatory takings and, more specifically, land use limitations. *Palazzolo*, 533 U.S. 606, 617-18. For regulatory takings, given the "difficulty of demonstrating that 'mere enactment' of regulations restricting land use effects a taking", "until [the] ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Palazzolo*, 533 U.S. 606, 621. On the other hand, the Supreme Court did not want to "burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision" *Palazzolo*, 533 U.S. 606, 621. Therefore, the Supreme Court laid down

13

this "reasonable degree of certainty" standard so the petitioner need not keep proposing lesser uses of the property when the proposed land use would not be permitted anyway. *See Palazzolo*, 533 U.S. 606, 619-20.

The Supreme Court itself has also noted "[t]he longstanding distinction between acquisitions of property for public use…and regulations prohibiting private uses…." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002). It emphasized that "it is inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." 535 U.S. 302, 323 (2002). The "reasonable degree of certainty" standard, as one carved out specifically for land-use regulatory takings, should not be applied to physical takings as in this case.

vi.  **The Sixth Circuit Court's *Harrison* Decision did not Hold that the Statute of Limitations Expired when the Adjudication of Foreclosure Was Issued.**

The recent Sixth Circuit case *Harrison v. Montgomery Cnty.*, Ohio, 997 F.3d 643 (6th Cir. 2021) does not suggest that *Williamson Cnty's* "final decision" requirement necessarily applied to physical takings. *Harrison* considered ripeness only in response to the claim preclusion issue that Montgomery County presented. After the contemporary decision in *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162 (2019), the Sixth Circuit Court focused on the preclusion trap that *Knick* tried to eliminate to allow the plaintiff's takings claim to proceed.

14

The Court in *Harrison* did not need to determine whether the takings claim became ripe exactly when the Adjudication of Foreclosure was issued, or when the property was transferred. As a result, the Court did not consider the twenty-eight (28) day redemption period. The *Harrison* decision can be read to mean that the claim became ripe when the redemption period ended. This reading is equally conducive to the Court's purpose in *Harrison*: saving the takings claim from the claim preclusion attack by Montgomery County. In stark contrast, the District Court inappropriately used *Harrison* to dismiss the takings claim in the present case.

### vii.    Under The "Contingent Future Events" Principle, The Taking Was Not Ripe at the Time the Adjudication of Foreclosure Was Issued.

As this case involved a physical taking, *Palazzolo's* "reasonable degree of certainty" standard is inapplicable. Also, *Williamson Cnty's* "final decision" requirement is less applicable. Given the established principle of "contingent future events" for ripeness, the most important ripeness consideration is when the physical taking was no longer a "contingent future event" under *Texas v. U.S.*, 523 U.S. 296, 298 (1998). According to the Board of Revision's own Adjudication of Foreclosure, BSI was able to redeem its properties "by tendering to the Summit County Fiscal Officer, an amount sufficient to pay the full amount of all [assessments, costs, etc.]" "prior to the expiration of the twenty-eight (28) day alternative right of redemption." [Foreclosure Order, R. 7-2, PageID 99]. By the County's own request and by order of the Board of Revision, this twenty-eight (28) day alternative right of redemption

expired on January 21, 2020. [Motion to Reinstate, R. 13-1, PageID 181; Order to Reinstate, R. 13-2, PageID 183]. This means that until January 21, 2020, BSI could have tendered the amounts owed to the Summit County Fiscal Officer, and BSI's building would have never been transferred. When the Adjudication of Foreclosure was issued, the physical taking was a contingent future event that might not happen if all impositions were repaid. It only ceased to be so at the end of redemption period. Therefore, the statute of limitations accrued only when the alternative redemption period ended or the property transferred.

### viii.   The Takings Claim Became Ripe and Hence the Statute of Limitations Accrued When BSI Lost the Right to Pay All Impositions to Retain Ownership, Even Under the *Williamson Cnty.* Standard.

Even if *Williamson County's* finality requirement is to be considered in the present case, finality rests upon the expiration of the right to stop the foreclosure transfer from happening. When the Sixth Circuit Court's slightly modified version – "final action" is applied, "the [physical] taking itself is viewed as a final action…," *Hensley*, 557 F.3d, 696. The physical taking here is the transfer of the property rather than the Adjudication of Foreclosure. The claim became ripe, and the statute of limitation accrued when the property was transferred. Alternatively, when *Kurtz's* modified version of "finality" is applied, the transfer of the property became final at the end of the alternative redemption period.

16

A similar conclusion is reached when the original version – "final decision" is applied. The Adjudication of Foreclosure served as functionally nothing more than a concrete warning: if BSI did not pay its taxes and other amounts owed by a certain date, it would lose the property. <u>Alternatively, it served as a promise by the government that it would not take the property if the owner paid all impositions within the redemption period</u>. This concrete warning or promise automatically became a final decision confirming the physical taking (transfer of ownership of the property) *only* when BSI no longer had the right to redeem the property. The statute of limitation began to run on that day.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the District Court's order to dismiss BSI's takings claim based on expiration of the statute of limitations. The date of accrual is either the end of the redemption period or when the title was actually transferred to the land bank. Either way, BSI filed the takings claim before the statute of limitations ran. The claim should not have been dismissed.

Respectfully submitted,

/s/ John T. Pfleiderer

| | |
|---|---|
| Warner Mendenhall    (0070165) | Mark Immormino  (0022293) |
| John Pfleiderer    (0100195) | MARK IMMORMINO CO. LPA |
| MENDENHALL LAW GROUP | 1801 Chartley Road |
| 190 North Union Street - Suite 201 | Gates Mills, OH 44113 |
| Akron, Ohio 44308 | Phone:    (216) 566-8099 |
| Phone:    (330) 535-9160 | Cell:    (216) 235-0416 |
| Facsimile:   (330) 762-9743 | Facsimile:   (440) 683-4809 |
| Email: | Email: markimmormino@msn.com |
| warner@warnermendenhall.com | |
| john@warnermendenhall.com | |
| Attorneys for Plaintiff-Appellant | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Court Local Rule 32(g), I hereby certify that the foregoing Principal Brief contains no more than 13,000 words, at 4,346 words.

/s/ John T. Pfleiderer
John T. Pfleiderer
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I certify that, on October 3, 2022, a copy of the foregoing Principal Brief was served upon counsel for Defendant Summit County via electronic mail at the addresses listed below:

| | |
|---|---|
| Stephen Funk | Grant McLeod |
| sfunk@ralaw.com | gmcleod@ralaw.com |

/s/ John T. Pfleiderer
John T. Pfleiderer
Attorney for Plaintiff-Appellant

18

**ADDENDUM**

## A. ORIGINATING COURT DOCUMENTS

| Doc.# | Date | Title | PageID# |
|-------|------|-------|---------|
| 1 | 1/3/2022 | Complaint | 1-54 |
| 7-2 | 6/3/2019 | Board of Revisions Foreclosure Order | 96-103 |
| 13-1 | 2/3/2020 | Motion to Reinstate Foreclosure to Active Docket | 181-182 |
| 13-2 | 2/3/2020 | Order Reinstating Foreclosure to Active Docket | 183 |
| 21 | 6/17/2022 | Order of Dismissal | 237-244 |